## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

IN RE AUSTIN CAPITAL MANAGEMENT,    :     No. 09-md-2075
LTD. SECURITIES & EMPLOYEE          :
RETIREMENT INCOME SECURITY ACT   :
(ERISA) LITIGATION                 :

-------------------------------------------------------------x

CONSTRUCTION INDUSTRY & LABORERS  :
JOINT PENSION TRUST, *et al.*,        :
                                 :
                 Plaintiffs,    :     No. 09 Civ 3614 (TPG)
                                 :
       - against -           :
                                 :
AUSTIN CAPITAL MANAGEMENT, LTD.,    :
*et al.*,                          :
                                 :
                 Defendants.   :

-------------------------------------------------------------x

PENSION FUND FOR HOSPITAL &       :
HEALTH CARE EMPLOYEES -         :
PHILADELPHIA & VICINITY, *et al.*,    :
                                 :     No. 09 Civ. 7134 (TPG)
                 Plaintiffs,    :
                                 :
       - against -           :
                                 :
AUSTIN CAPITAL MANAGEMENT, LTD.,    :
                                 :
                 Defendant.    :

-------------------------------------------------------------x

AUSTIN CAPITAL MANAGEMENT, LTD.,    :
*et al.*,                          :
                                 :
                 Plaintiffs,    :     No. 09 Civ. 7135 (TPG)
                                 :
       - against -           :
                                 :
THE BOARD OF TRUSTEES FOR THE TEXAS :
IRON WORKERS' PENSION FUND, *et al.*,  :
                                 :
                 Defendants.   :

-------------------------------------------------------------x

| | | |
|---|---|---|
| RICHARD PESHKIN, | : | |
| | : | No. 08 Civ. 11183 (TPG) |
| Plaintiff, | : | |
| | : | |
| - against - | : | |
| | : | |
| TREMONT GROUP HOLDINGS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| BOARD OF TRUSTEES, STEAMFITTERS | : | |
| LOCAL 449 RETIREMENT SECURITY FUND, | : | |
| *et al.*, | : | No. 09 Civ. 7660 (TPG) |
| | : | |
| Plaintiffs | : | |
| | : | |
| - against - | : | |
| | : | |
| AUSTIN CAPITAL MANAGEMENT, LTD., *et al.*, | : | |
| | : | |
| Defendants | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| LABORERS' DISTRICT COUNCIL OF | : | |
| WESTERN PENNSYLVANIA PENSION FUND, | : | No. 09 Civ. 7889 (TPG) |
| *et al.*, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| - against - | : | |
| | : | |
| AUSTIN CAPITAL MANAGEMENT, LTD., *et al.*, | : | |
| | : | |
| Defendants | : | |

_____ :

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     MOVANTS MEET THE LEGAL STANDARD FOR RECONSIDERATION . . 4

    II.    THE ERISA CLAIMS SHOULD BE COORDINATED WITH THE
           SECURITIES CLAIMS, NOT CONSOLIDATED . . . . . . . . . . . . . . . . . . . . . . . 5

    III.   THE ERISA CLAIMS REQUIRE SEPARATE COUNSEL TO AVOID
           POTENTIAL CONFLICTS AND ASSURE ADEQUACY OF
           REPRESENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    IV.   THE LAW DOES NOT SUPPORT APPOINTMENT OF LEAD PLAINTIFF
           IN AN ERISA CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    V.    THE COURT SHOULD APPOINT SPECTOR ROSEMAN AS COUNSEL
           FOR THE ERISA PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

         A.    Counsel for Plaintiffs Has Demonstrated a Commitment to Identifying
               and Investigating Potential Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         B.    Plaintiffs' Counsel Meet the Experience and Knowledge Requirements
               of Rule 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

         C.    Counsel for Plaintiffs Have the Resources Necessary to Represent the
               Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## CASES

*In re Aircrash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977) . . . . . . . . . . . 12

*In re Alstom SA Sec. Litig.*, 253 F.R.D. 266 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . 7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) . 7, 8

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000) . . . . . . . . . . . 7

*In re Bank of America Corp. Sec., Deriv., and ERISA Litig.*, ___ F. Supp. 2d ___, 2009 WL. 1875764 (S.D.N.Y. June 30, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Bear Stearns Cos., Inc. Sec., Deriv. & Employee Ret. Income Sec. Act (ERISA) Litig.*, 08 MDL 1964 (RWS), 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) . . . . . . . . . . . . . . . . . . 8, 11

*In re Bendectin Litigation*, 857 F.2d 290 (6th Cir. 1988), cert. denied, 488 U.S. 1006 (1989) . 12

*Board of Trustees, Steamfitters Local 449 Retirement Security Fund v. Austin Capital Management, Ltd.*, C.A. No. 09-2634 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bussian v. RJR Nabisco*, 223 F.3d 235 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Construction Industry and Laborers Joint Pension Trust v. Austin Capital Management*, No. 09 Civ. 3614 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.), cert. denied, 459 U.S. 1069 (1982) . . . . . . . . . 6

*In re Express Scripts, Inc., PBM Litig.*, Master Case No. 05-md-01672-SNL (E.D. Mo.) . . . . 16

*Fields v. Wolfson*, 41 F.R.D. 329 (S.D.N.Y.1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Flag Telecom Holdings, Ltd Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) . . . . . . . . . . . . . . . 7

*In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.) . . . . . . . . . . . . . . . . . . . . . 15

*Hill v. The Tribune Co.*, No. 05 C 2602, 2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) . . . . . . . 10

*In re Imax Sec. Litig.*, Master File No. 06 Civ 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Initial Public Offering Securities Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002) . . . . . . . . . . . 11

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001) . . . . . . . . . . 9, 10

*Laborers District Council of Western Pennsylvania Pension Fund v. Austin Capital Management, Ltd.*, C.A. No. 09-2848 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Linerboard Antitrust Litigation*, C.A. No. 98-5055 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . 15

*Local 56 UFCW v. Campbell Soup Co.*, 954 F. Supp. 1000 (D. N.J. 1997) . . . . . . . . . . . . . . 16

*In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.) . . . . . . . 15

*Marino v. U.S.*, No. 97 Civ. 1884(RPP), 1998 WL 512958 (S.D.N.Y. Aug. 18, 1998) . . . . . . 4

*In re Marsh ERISA Litig.*, Master File No. 04 cv 8157 (SWK) (S.D.N.Y. Apr. 27, 2005) . . . . . 6

*In re McKesson 350 SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) . 27, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Merck & Co., Inc., Sec., Deriv. & "ERISA" Litig.*, MDL No. 1658 (SRC), Master File No. 3:05-CV-1151-SRC-TJB, (D.N.J. May 4, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Merrill Lynch & Co., Inc. Sec. Deriv. and ERISA Litig.*, 07 Civ. 9633 (JSR) (S.D.N.Y. March 12, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Modafinal Antitrust Litig.*, C.A. No. 06-1797 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . 16

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*, C.A. No. 05-11148 (D. Mass.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (PSD) . . . . . . . . . . . . . . . . . . 15

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) . . . . . . . . . . . . . . . . . . . . . . . 15

*Pennsylvania Federation, Brotherhood of Maintenance of Way Employes v. Norfolk Southern Corp.*, C.A. No. 02-9049 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pension Fund for Hospital and Health Care Employees - Philadelphia and Vicinity and trustee Henry Nicholas*, C.A. No. 09-615 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) 15, 16

*Public Employees' Retirement Assoc. of New Mexico v. PricewaterhouseCoopers, LLP*,
    No. 07-3756-cv, 2009 WL 27704 (2d Cir. Jan. 6, 2009) . . . . . . . . . . . . . . . . . . . . . 6

*In re Relafen Antitrust Litig.*, C.A. No. 01-12239 (D. Mass.) . . . . . . . . . . . . . . . . . . . . 16

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rogers v. Baxter Intl., Inc.*, 521 F.3d 702 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 11

*Sheet Metal Workers Local 28 of New Jersey Welfare Fund v. Gallagher*, C.A. No. 87-3020
    (D. N.J.) *on appeal*, 960 F.2d 1195 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Simon II Litig.*, 211 F.R.D. 86 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Simon II Litig.*, 407 F.3d 125 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) . . . . . . . . . . . . . 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) . . . . . . . . . . . . . . . . . . 6

*In re Terazosin Hydrochloride Antitrust Litig*, 220 F.R.D. 672 (S.D. Fla. 2004) . . . . . . . . . . 14

*Tittle v. Enron Corp. (In re Enron Corp. Sec., Deriv. & ERISA Litig.)*, 284 F. Supp. 2d 511 (S.D.
    Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08 Civ. 11117
    (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*In re TriCor Antitrust Litig.*, C.A. No. 05-360 (D. Del.) . . . . . . . . . . . . . . . . . . . . . . . 16

*Walker v. Deutsche Bank*, AG, No. 04 Civ. 1921 (DAB), 2005 WL 2207041 (S.D.N.Y. Sept. 6,
    2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Word v. Croce, Inc.*, No. 01 Civ. 9614(LTS), 2004 WL 434038 (S.D.N.Y. March 9, 2004) . . . 4

## STATUTES

15 U.S.C. §§ 77z- 1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 U.S.C. §1001 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. § 1132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 1144(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 12

Fed. R. Civ. P. 23(g)(1)(C)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

**MISCELLANEOUS**

*Manual for Complex Litigation* § 10.221 (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

The Pennsylvania Pension Fund plaintiffs[1] hereby move for reconsideration of the Court's

Order of Consolidation dated October 23, 2009 (D.E. 25).   The Court made several rulings *sua*

*sponte* on the organization of the case, with no motion, no briefing and no opportunity to argue

most of the issues involved.  In doing so, the Court: (1) consolidated all claims, despite the fact

that the securities claims rest on very different grounds from the ERISA claims and raise a

potential conflict; (2) failed to recognize a potential conflict of interest involving one of the law

firms and its role in another case; and failed to even consider as a lead counsel the firm that

brought the very first ERISA action and brought three of the seven cases involved in this

proceeding.  The principles of Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3 - as well as

fundamental fairness - require that the Court consider these issues on the merits.

## STATEMENT OF THE CASE

These cases all originate with the fraudulent investment schemes of Bernard L. Madoff

and Bernard L. Madoff Investment Securities, LLC ("Madoff Securities").  Madoff is responsible

for the loss of as much as $64 billion through a giant Ponzi scheme in which early investors were

paid with the invested proceeds of later investors.  Defendant Austin Capital Management

("ACM") is a financial investment management firm and is a fiduciary to many employee pension

benefit plans.  ACM directed significant amounts of investment, estimated at present to be $186

million, into "feeder funds" which directed all of their assets to Madoff for investment into stocks.

*See* Hospital Fund Compl. at ¶¶ 1-4.

Although ACM was a fiduciary and had a duty to act prudently with respect to any

---

[1]Pension Fund for Hospital and Health Care Employees - Philadelphia and Vicinity; Henry
Nicholas; Board of Trustees, Steamfitters Local 449 Retirement Security Fund; Joseph M. Little;
Regis R. Claus; Laborers' District Council of Western Pennsylvania Pension Fund; Philip Ameris;
and John C. Busse.

investment, it failed to adequately investigate, conduct a complete and proper due diligence, and evaluate the evidence that any Madoff-related investment would be risky, imprudent and inappropriate. Notwithstanding numerous "red flags" about the Madoff operations, ACM continued to recommend and invest hundreds of millions of dollars in hedge funds such as Rye Select Broad Market Prime Fund Securities ("Rye Select") that placed all or virtually all of their investments with Madoff and Madoff Securities. As a result, the pension funds suffered millions in losses.

The very first case against ACM for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.* ("ERISA"), was filed on February 12, 2009, by one of the movants here, the Pension Fund for Hospital and Health Care Employees - Philadelphia and Vicinity and trustee Henry Nicholas. *See* C.A. No. 09-615 (E.D. Pa.). Two additional pension funds filed similar complaints in the Eastern District of Pennsylvania on June 11 and 25, 2009, respectively.[2] Those complaints not only sued ACM but its officers/directors and parent entities, and added an ERISA claim against possible non-fiduciaries as well.

On March 18, 2009, a small pension plan filed a complaint against numerous individuals and entities associated with Tremont Group Holdings, Inc. One count of the complaint alleged an ERISA violation against ACM. That action was consolidated with other Tremont and Rye Select

---

[2] *Board of Trustees, Steamfitters Local 449 Retirement Security Fund v. Austin Capital Management, Ltd.*, C.A. No. 09-2634 (E.D. Pa.); and *Laborers District Council of Western Pennsylvania Pension Fund v. Austin Capital Management, Ltd.*, C.A. No. 09-2848 (E.D. Pa.). At the time ACM filed its motion with the MDL Panel, only one of the Pennsylvania pension fund cases had been filed. The remaining two were later submitted to the MDL Panel as potential tag-along cases, and were subsequently transferred to this Court in September as No. 09 Civ. 7660 and No. 09 Civ. 7889.

actions before this Court. *See In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08 Civ. 11117 (S.D.N.Y.). This Court ultimately divided the cases into three parts, each with separate amended consolidated complaints: a securities action, an insurance action, and a state law claims action. One of the 14 counts of the amended state law complaint contained a claim for breach of ERISA against ACM.

On or about April 17, 2009, the Las Vegas construction industry pension plans filed a complaint in the Southern District of New York against ACM and its officer/directors, alleging nine counts in securities fraud, breach of ERISA, professional negligence, negligent misrepresentation, common law breach of fiduciary duty, breach of contract, and unjust enrichment. *Construction Industry and Laborers Joint Pension Trust v. Austin Capital Management*, No. 09 Civ. 3614 (S.D.N.Y.). The plaintiffs there sought to represent a putative class of all investors with ACM, with a subclass of employee benefit plans with claims under ERISA.[3]

ACM filed a motion for transfer and consolidation with the Judicial Panel on Multidistrict Litigation ("MDL Panel"), seeking to have all claims sent to the Western District of Texas. In a decision and Order dated August 11, 2009, the MDL Panel transferred all of the cases to this Honorable Court. The Order left it to the transferee court to decide whether claims should be consolidated or coordinated as necessary. *Id.* at 2. The MDL Panel specifically refrained from consolidating these claims with the Tremont Litigation earlier sent to the Court; indeed, the MDL Panel expressly renamed the litigation from *In re Rye Select Broad Market Prime Fund* - a

---

[3] The final case was filed by ACM itself, seeking to prevent an arbitration demanded by the Texas Iron Workers fund pursuant to its partnership agreement with ACM. *Austin Capital Management, Ltd. v. Board of Trustees of the Texas Iron Workers Pension Fund*, C.A. 09-351 (W.D. Tex.).

Tremont investment fund - to *In re Austin Capital Management, Ltd.*

At a conference before the Court on October 22, 2009 - without any pending motion, opportunity for briefing, and with no prior notice from the Court of what it intended to cover in the conference - the Court appointed Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Hagens Berman Sobol & Shapiro LLP ("Hagens Berman") as co-lead counsel for all plaintiffs and consolidated all cases together. The Court then promptly closed the hearing and left the bench.

On October 23, 2009, the Court issued an Order confirming its rulings from the bench. D.E. 25. This motion follows.

## ARGUMENT

## I.     MOVANTS MEET THE LEGAL STANDARD FOR RECONSIDERATION

Pursuant to Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3, the Court may reconsider its previous ruling if (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice. *Word v. Croce, Inc.*, No. 01 Civ. 9614(LTS), 2004 WL 434038, at *2 (S.D.N.Y. March 9, 2004) (reconsideration under Rule 59(e) and Local Rule 6.3 evaluated under the same standard); *Marino v. U.S.*, No. 97 Civ. 1884(RPP), 1998 WL 512958, at *2 (S.D.N.Y. Aug. 18, 1998) (same). Such a motion is appropriate where the moving party can point to controlling decisions or data that the court overlooked – matters that might reasonably expected to alter the conclusion arrived at by the court. *Id.* (citing *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Motions for reconsideration have been granted where a party seeks review of an order

appointing unsuitable lead plaintiffs. *See, e.g., In re Imax Sec. Litig.*, Master File No. 06 Civ. 6128(NRB), 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (reconsideration granted and new lead plaintiff appointed where standing to bring claims of original lead plaintiff was in question).

In the case at bar, respectfully, the Court should reconsider its October 23 Order, which was made with no notice of the issues, no briefing, no consideration of the potential conflicts posed by consolidating the securities and ERISA claims, and no consideration of the potential conflicts facing the two other plaintiff law firms. So as to better inform the Court's ruling and to elucidate these important matters for the Court – and as a matter of fundamental fairness – these issues should have been briefed or in some way presented to the Court with prior notice to the parties. As discussed below, the Court's failure to appoint separate counsel for the very differently situated plaintiff groups in this multi-district litigation creates the potential for protracted and successful litigation to be undermined by a post-verdict or post-settlement appeal that raises matters of inadequate representation or lack of typicality – issues which this Court has not considered.

## II. THE ERISA CLAIMS SHOULD BE COORDINATED WITH THE SECURITIES CLAIMS, NOT CONSOLIDATED

In its Order of Ocrtober 23, the Court consolidated all claims against ACM into one proceeding, lumping together securities fraud claims, state law claims, and ERISA claims. However, there are significant differences between claims of securities fraud and claims for a breach of fiduciary duty under ERISA which warrant separate representation of counsel. Federal claims for securities fraud must be pled with great specificity and are subject to a higher standard of pleading and proof. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148

-5-

(2008); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). By contrast, ERISA establishes a duty of fiduciary care that is among the "highest known to the law." *Bussian v. RJR Nabisco*, 223 F.3d 235, 294 (5th Cir. 2000); *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir.), *cert. denied*, 459 U.S. 1069 (1982). There is no requirement that an ERSIA plaintiff establish scienter or reliance, only that the fiduciaries failed to act with the required duty of prudence.[4]

Moreover, discovery in the ERISA cases can commence immediately, unlike the securities cases where, pursuant to the Private Securities Litigation Reform Act of 1975 ("PSLRA"), all discovery is automatically stayed pending resolution of the motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007); *Public Employees' Retirement Assoc. of New Mexico v. PricewaterhouseCoopers, LLP*, 2009 WL 27704, at *1 (2d Cir. Jan. 6, 2009); *see In re Marsh ERISA Litig.*, Master File No. 04 cv 8157 (SWK) (S.D.N.Y. Apr. 27, 2005), D.E. 23 (ERISA specific documents must be produced prior to the filing of motions to dismiss). Moreover, ACM and its related defendants have filed answers to the various ERISA claims, but filed a motion to dismiss against the securities claims.

Claims under ERISA face a lower standard of proof, a lesser standard of pleading, and are not automatically stayed due to a motion to dismiss. Thus, there is no reason counsel for ERISA claimants should not proceed immediately with discovery on their issues. Consolidation in one case restricts the ERISA claims and drags the case down to the lowest common denominator.

---

[4] While some of the other employee benefit fund plaintiffs have stated state law claims against ACM, these are of doubtful significance given the broad preemptive force of ERISA. *See* 29 U.S.C. § 1144(a); *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 657 (1995).

### III. THE ERISA CLAIMS REQUIRE SEPARATE COUNSEL TO AVOID POTENTIAL CONFLICTS AND ASSURE ADEQUACY OF REPRESENTATION

The Court did not have an opportunity to hear about the potential conflicts of interest concerning the other two law firms and thus unintentionally created a situation where class members could claim that they were not afforded adequate representation as required for class certification. To establish typicality under Fed. R. Civ. P. 23(a)(3), a plaintiff must demonstrate that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 276 (S.D.N.Y. 2008). Moreover, adequacy of representation, perceptibly related to typicality, "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class, and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000). The focus is on uncovering "conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997). Thus, where actual intra-class conflicts exists, this may be a bar to certification of a putative class. *See In re Alstom*, 253 F.R.D. at 276. This potential conflict can be avoided here by appointing separate interim-lead counsel for the securities and ERISA claims.

This Court has previously recognized the need to divide the securities, state law, and insurance cases into three separate actions and appoint interim-lead counsel for each. *See In re Tremont*, Order dated March 26, 2009 (attached hereto as Lieverman Decl., Ex. 2). Here, the

ERISA claims should be afforded separate counsel from that appointed for the securities claims. This is hardly a novel concept and commonly recognized in many class actions where securities fraud claims are intertwined with ERISA claims.[5]

The ERISA and securities claims are divergent enough to require separate counsel to adequately represent each set of claims. As the Supreme Court has held on multiple occasions, to do otherwise would create a merging of claims rife with intra-class conflicts, all represented by the same counsel. *See Amchem*, 521 U.S. at 627 (affirming the Third Circuit's reversal of approval of the settlement in part because the settling parties achieved a "global settlement with no structural assurance of fair and adequate representation for the diverse groups and individuals affected."); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) ("It is obvious after *Amchem* that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel."). *See also In re Simon II Litig.*, 211 F.R.D. 86, 181 (E.D.N.Y. 2002) (following *Amchem* and *Ortiz*, it is the responsibility of the court to ensure conflicts of interest between

---

[5] *See In re Bank of America Corp. Sec., Deriv., and ERISA Litig.*, ___ F. Supp. 2d ___, 2009 WL 1875764, at *11 (S.D.N.Y. June 30, 2009) (court separately consolidated the securities, derivatives, and ERISA cases based on differences in the causes of action, defendants, and class periods, appointed separate counsel for each); *In re Bear Stearns Cos., Inc. Sec., Deriv. & Employee Ret. Income Sec. Act (ERISA) Litig.*, 08 MDL 1964(RWS), 2009 WL 50132, *2 (S.D.N.Y. Jan. 5, 2009) (separately consolidating securities and ERISA claims); *In re Merrill Lynch & Co., Inc. Sec., Deriv. and ERISA Litig.*, 07 Civ. 9633 (JSR) (S.D.N.Y. March 12, 2008) (same); *In re Lehman Brothers ERISA Litig.*, No. 08 Civ. 5598 (LAK) (S.D.N.Y. Sep. 4, 2008), Dkt. No. 38 (same); *Tittle v. Enron Corp.* (*In re Enron Corp. Sec., Deriv. & ERISA Litig.*), 284 F. Supp. 2d 511, 647 (S.D. Tex. 2003) (acknowledging court separately consolidated securities and ERISA cases); *In re Merck & Co., Inc., Sec., Deriv. & "ERISA" Litig.*, MDL No. 1658 (SRC), Master File No. 3:05-CV-1151-SRC-TJB, Pretrial Order No. 1, Initial Case Management Order (D. N.J. May 4, 2005), Dkt. No. 60 (separately consolidating securities, ERISA and derivative cases and appointing separate lead counsel for each).

counsel as well as class members is neutralized) *vacat'd on other grounds*, 407 F.3d 125 (2d Cir. 2005); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 343 (N.D. Ohio 2001) (structural assurance of fair and adequate representation for diverse groups reached by providing subclasses with separate counsel).

Based on *Amchem* and its progeny, separate counsel should be appointed for distinct groups such as the securities claims and ERISA claims here. As noted above, the employee benefit funds have strong claims for breach of fiduciary duty that are easier to litigate than the fraud-based securities claims. There is a potential danger that in a unified class with a unified co-lead counsel for all, the strong ERISA claims could be diluted to pay the potentially weaker - but numerically larger - claims of the non-pension fund investors. This potential is precisely why the Supreme Court required separate counsel for class members with different claims.

In seeking to be named as Co-lead counsel, Hagens Berman has an additional potential conflict, in that it is also representing a class of investors in the *Tremont* case *that includes ACM*. In a letter to its investors dated May 12, 2009 (attached hereto as Lieverman Decl., Ex. 1, at 1.), ACM referenced the "numerous class action lawsuits filed against Tremont" in this District. ACM states:

> The Austin Capital Funds are part of the plaintiff class as described in the consolidated federal law claims and state law claims lauits in the SDNY, and the Austin Capital Funds (and you, as an investor) will share proportionately in any damages awarded and collected as a result of the lawsuits unless ACM 'opts out' and decides to pursue litigation separately.

ACM's letter described how it and three other hedge funds jointly hired counsel to explore taking legal action directly against Tremont. They concluded that "while there clearly are grounds on which to pursue Tremont, Oppenheimer [a parent company] and KPMG [the auditors], *there are*

*no compelling reasons to opt out of the class actions and pursue an individual action."* *Id.* (emphasis added).

This Court named Hagens Berman to be the class counsel for the state law claims in *In re Tremont*. The Court's October 23 Order here places Hagens Berman in the potentially compromised position of litigating against an entity it clearly represents in litigation arising out of the same facts and circumstances. This would seem to be a clear conflict of interest, as well as raising a serious concern about adequacy of representation under Rule 23(a)(4).

Movants here freely acknowledge that both Coughlin Stoia and Hagens Berman are well-regarded and experienced class action litigators, and the undersigned have participated with them as co-lead counsel in numerous major cases. However, a good law firm may not be the appropriate class counsel (or sole class counsel) in every case. Here, where there are at least two issues raising concern about conflicts and adequacy of representation, it is incumbent to resolve these potential problems by (a) having separate classes and (b) having sole or addtional counsel with no such conflicts.

## IV. THE LAW DOES NOT SUPPORT APPOINTMENT OF LEAD PLAINTIFF IN AN ERISA CASE

The Court further erred in appointing three benefit funds[6] as lead plaintiffs for a single class. While appointment of lead plaintiff(s) is required under the PSLRA, there is no such requirement under ERISA or Rule 23. *Hill v. The Tribune Co.,* No. 05 C 2602, 2005 WL

---

[6] There are no papers filed in this case to determine whether the three funds - all clients of Coughlin Stoia - are even qualified to be lead plaintiffs, or that they function together such that they deserve to be appointed together. Coughlin Stoia did file a motion for appointment prior to the MDL proceedings which was never served in the consolidated matter. Even there, it is impossible to know exactly where to find the "Operating Engineers Trust Funds" - there is no address given in the complaint or motion. There are at least two different entities by that name which appear in an internet search, one in Las Vegas and one in Pasadena.

3299144 (N.D. Ill. Oct. 13, 2005). Such an appointment essentially freezes out the other named plaintiffs from the critical litigation decisions in which they, as parties, should be participating.

The PSLRA mandates early appointment of a lead plaintiff in securities fraud class actions. 15 U.S.C. §§ 77z- 1(a) and 78u-4(a)(3); *see also In re Bear Stearns*, 2009 WL 50132, at *7. By contrast, this procedure is neither mentioned in nor contemplated by Fed. R. Civ. P. 23, which has no provision for appointment of a "lead plaintiff"; instead, under Rule 23 class representatives are normally designated when a class is certified. "PSLRA does not amend or supersede ERISA. It is limited… to the securities laws." *Rogers v. Baxter Intl., Inc.,* 521 F.3d 702, 705 (7th Cir. 2008).

Under Rule 23(a)(4), the Court must determine whether the proffered class representatives are "adequate," but at no time must the Court designate a "lead plaintiff." A lead plaintiff under the PSLRA is not the same as a class representative. *In re Initial Public Offering Securities Litig.,* 214 F.R.D. 117, 123 (S.D.N.Y. 2002); *see* Manual for Complex Litig., § 21.141 (4th ed.) ("Note that the court may or may not select the lead plaintiff [in a PSLRA case] to serve as a Rule 23(a) 'class representative' if the court decides to certify a class.").

In an ERISA class action, fiduciaries are covering assets on behalf of plan participants; there is no reason to believe at this stage that any one pension fund or its fiduciaries will be better situated to make decisions for the class. Indeed, the presence of multiple named plaintiffs may be important in meeting unforseen defense arguments on summary judgment and class certification. Thus, the better practice is to follow Rule 23 and the Manual for Complex Litigation, and treat all plaintiffs as putative class representatives as to the ERISA claims. Indeed, this Court followed just that procedure in *In re Tremont*, D.E. 44.

## V. THE COURT SHOULD APPOINT SPECTOR ROSEMAN AS COUNSEL FOR THE ERISA PLAINTIFFS

As the Court well knows, prior to certifying a class under Fed. R. Civ. P. 23, the Court may designate interim counsel to act on behalf of the putative class. Rule 23(g)(C)(2)(A). Interim lead counsel direct the day-to-day conduct of the litigation. *See* MCL 4th § 10.221. This need not be only one law firm. In *Walker v. Deutsche Bank*, AG, No. 04 Civ. 1921 (DAB), 2005 WL 2207041 (S.D.N.Y. Sept. 6, 2005), the Court stated:

> Moreover, a court is not restricted to the appointment of only one lead counsel, and indeed, appointment of a single lead counsel is inappropriate when counsel for each named plaintiff in the consolidated actions, "being so experienced in [the] type of litigation [at issue in the consolidated actions], may be expected to coordinate the conduct of the proceedings in a manner that will avoid unnecessary duplication."

*Id.* at *3 (quoting *Fields v. Wolfson*, 41 F.R.D. 329, 330 (S.D.N.Y.1967). *Accord*, *In re Bendectin Litigation*, 857 F.2d 290, 297 (6th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989); *In re Aircrash Disaster at Florida Everglades*, 549 F.2d 1006, 1014 (5th Cir. 1977) ("It is not open to serious question that a federal court in a complex, consolidated case may designate one attorney or set of attorneys to handle pre-trial activity on aspects of the case where the interests of all co-parties coincide.").[7]

In determining lead counsel, the Court should "conduct an independent review (usually a hearing is advisable) to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." MCL 4th at § 10.22. Indeed, the most important factor is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* at § 10.221.

---

[7] See also *Manual for Complex Litigation* § 10.221 (4th ed.).

-12-

In appointing class counsel, the Court must consider the following four factors:

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(I). As should be obvious from the foregoing, if the Court is to undertake its own analysis for appointment of lead counsel, it must open the process to those firms which would desire to take a leadership role and allow them the opportunity to file papers demonstrating their experience, knowledge of the case, and suitability for appointment. This motion affords counsel that opportunity which was not available previously.

### A. Counsel for Plaintiffs Has Demonstrated a Commitment to Identifying and Investigating Potential Claims

With respect to the first factor, Spector Roseman has already undertaken numerous steps in prosecuting this action. Counsel here brought the first ERISA action in this District or anywhere else. Prior to filing, Spector Roseman attorneys met with general counsel for the Pension Fund, interviewed the investment consultant, and reviewed the documents related to the selection and performance of ACM. Spector Roseman conducted a review of company statements, and media and trade paper coverage tracing the history of the Madoff scandal, not only ACM's conduct but the known details of the fraud perpetrated by Bernard Madoff-related entities. Since the filing of the Complaint, Plaintiffs' counsel has spoken to counsel for other pension funds, interviewed potential witnesses, obtained access to thousands of pages of documents related to ACM, cooperated with the U.S. Department of Labor's inquiry, and has

been continuously reviewing various news media accounts and articles covering the unfolding problems.

Spector Roseman's attention to the case is evidenced in the three complaints that were filed, which are the most detailed to date about ACM's misconduct. They collect the largest number of red flags that ACM should have caught before investing in Madoff-related securities. The Laborers Fund and Steamfitters Fund complaints also bring into the case the solvent parent bodies of ACM, a critical aspect of a case where ACM has already begun to liquidate itself. *See* Laborers Fund Compl. ¶¶ 11-13, 20. Those complaints also contained a claim under ERISA for non-fiduciaries. *Id.* at ¶ 96.[8]

The Pennsylvania Pension Funds are substantial investors, with total combined assets of more than $900 million as of December 31, 2008. With total losses here approaching $2 million, they have a real stake in this litigation and can be depended upon to pursue this litigation just as much as the other benefit fund plaintiffs.

### B. Plaintiffs' Counsel Meet the Experience and Knowledge Requirements of Rule 23(g)

The second and third Rule 23(g) factors – the most persuasive ones – also demonstrate that the proposed Interim Lead Counsel are the best qualified to serve in this ERISA class action. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig,* 220 F.R.D. 672, 702 (S.D. Fla. 2004) (explaining that the "most persuasive" factor in choosing lead counsel pursuant to Rule 23(g) may be proposed counsel's "experience in, and knowledge of, the applicable law in this field").

Spector Roseman is ideally suited to lead the prosecution of the ERISA claims. The

---

[8] Spector Roseman also understood that plaintiffs had to include named fiduciaries, since ERISA does not give jurisdiction to the benefit funds themselves to pursue breach of fiduciary duty claims. *See* 29 U.S.C. § 1132.

claims herein are based in the substantive law of ERISA, but the factual background involves fraudulent investment schemes. As demonstrated in its Firm Biography (attached hereto as Lieverman Decl., Ex. 3), Spector Roseman has extensive experience in complex class action litigation as well as securities fraud and ERISA litigation.

Spector Roseman has had substantial success in litigating complex class actions. Some the Firm's most recent successful cases include:

- *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, C.A. No. 05-11148 (D. Mass.) (co-lead counsel for end-payor purchasers, settled for $350 million plus rollbacks of published prices);

- *In re McKesson 350 SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (co-lead counsel in securities action, settlements of $145 million);

- *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.) (counsel to lead plaintiff, settlements exceeded $98 million);

- *In re Linerboard Antitrust Litigation*, C.A. No. 98-5055 (E.D. Pa.) (co-lead counsel, settled for $202 million);

- *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (PSD) (E.D. Pa.) (co-lead counsel for direct purchasers, settled for $120 million);

- *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.) (co-lead counsel, settled for $120 million);

- *Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.* C.A. 03-4578 (E.D. Pa.) (co-lead counsel for direct purchasers of Paxil, an antitrust case, settled for $100 million).

Spector Roseman initiated the private investigation and filed the first cases challenging the misuse of the "Average Wholesale Price" in selling pharmaceutical products. *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.); and *In re Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.). These cases, pursued by a

team of co-lead counsel, resulted in settlements of $150 million in *Lupron* and over $230 million to date in *AWP* (with two defendants still facing trial).

Spector Roseman also has substantial experience in litigating labor and employee benefit issues. The Firm was sole lead counsel for plaintiffs in *Pennsylvania Federation, Brotherhood of Maintenance of Way Employes v. Norfolk Southern Corp.*, C.A. No. 02-9049 (E.D. Pa.), in which plaintiffs successfully challenged the policy of requiring investment of all employer contributions to the 401(k) plan in company stock. Partners have handled other major ERISA cases and class actions. *See Sheet Metal Workers Local 28 of New Jersey Welfare Fund v. Gallagher*, C.A. No. 87-3020 (D. N.J.), *on appeal*, 960 F.2d 1195 (3d Cir. 1992); *Local 56 UFCW v. Campbell Soup Co.*, 954 F. Supp. 1000, 1003 (D. N.J. 1997) (settlement created a $114 million employee-controlled voluntary employee beneficiary association, called by Court "one of the most innovative and forward-looking resolutions that this court has approved in the twenty-two years of its tenure."). Further, Spector Roseman frequently represents employee benefit plans in class action litigation.[9]

Spector Roseman has the experience and expertise in complex class actions, as well as experience with cases under ERISA, to successfully lead plaintiffs in this matter. The Firm is well suited to serve as Interim Lead Counsel.

---

[9] *In re Express Scripts, Inc., PBM Litig.*, Master Case No. 05-md-01672-SNL (E.D. Mo.) (representing the Health and Welfare Fund and the Retiree Health and Welfare Fund of the Patrolmen's Benevolent Association of the City of New York); *see also In re Relafen Antitrust Litig.*, C.A. No. 01-12239 (D. Mass.); *In re Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, C.A. No. 05-11148 (D. Mass.); *In re TriCor Antitrust Litig.*, C.A. No. 05-360 (D. Del.); *In re Modafinal Antitrust Litig.*, C.A. No. 06-1797 (E.D. Pa.).

### C. Counsel for Plaintiffs Have the Resources Necessary to Represent the Class

Spector Roseman is a well-established and successful law firm that has the resources and personnel necessary to pursue a case of this magnitude, as it has demonstrated in numerous other large-scale class actions. The firm's resources are not merely financial, but also include substantial expertise and experience that they have developed in other cases that will be an obvious benefit to the Plaintiffs in this action. Counsel's ability to draw from this experience will allow it to streamline the litigation and create efficiencies unavailable to other firms. Thus, the resource factor under Rule 23(g) also favors appointment of the proposed Interim Lead Counsel.

Spector Roseman stands ready to serve as lead counsel for all non-securities aspects of this case. As described above, however, movants recognize that courts frequently appoint more than one firm to be lead counsel. If this Court determines that there is not a conflicts bar to the other two firms serving as lead counsel, Spector Roseman is willing to serve as co-lead counsel with them. However, it is difficult to understand why the Court, having decided to appoint more than one co-lead counsel, would then appoint two of the three competing firms but not Spector Roseman. The Court gave no basis for this decision and, indeed, did not even allow for briefing or argument on the subject. Respectfully, this Court should reconsider that conclusion now that papers have been filed.

## CONCLUSION

For all the above-stated reasons, it is respectfully submitted that the Motion for Reconsideration be granted, that the securities, ERISA and state law claims be divided with separate lead counsel, and that Spector Roseman be appointed lead or co-lead counsel for the non-securities claims.

Dated: November 5, 2009

/s/ Theodore M. Lieverman
Robert M. Roseman
Theodore M. Lieverman
Andrew Abramowitz
Spector Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300
Fax (215) 496-6611

*Attorneys for Plaintiff Plaintiffs Pension Fund for Hospital and Health Care Employees - Philadelphia and Vicinity; Henry Nicholas; Board of Trustees, Steamfitters Local 449 Retirement Security Fund; Joseph M. Little; Regis R. Claus; Laborers' District Council of Western Pennsylvania Pension Fund; Philip Ameris; and John C. Busse*