UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                          :
In re AUSTIN CAPITAL MANAGEMENT,          :
LTD, SECURITIES & EMPLOYEE                :
RETIREMENT INCOME SECURITY ACT            :         09 M.D. 2075
(ERISA) LITIGATION                        :
                                          :         **<u>OPINION</u>**
                                          :
                                          :
                                          :
                                          :
                                          :
                                          :
------------------------------------------x


        This putative class action arises out of the massive Ponzi scheme

orchestrated by Bernard Madoff.  Plaintiffs are investors in hedge funds

controlled by Austin Capital Management Ltd.  A portion of these funds' assets

was invested in the Rye Select Broad Market Prime Fund, LP ("Rye Select Prime

Fund"), managed by Tremont Partners, Inc.  The Rye Select Prime Fund, in

turn, paid its assets over to Madoff and his investment firm, Bernard L. Madoff

Investment Securities LLC.  When Madoff's fraud was discovered, Austin

Capital's entire investment in the Rye Select Prime Fund was lost.

        The consolidated second amended class action complaint alleges,

against numerous defendants, violations of the Securities Act of 1933

("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), the

Employee Retirement Income Security Act of 1974 ("ERISA"), breach of contract, breach of fiduciary duty, unjust enrichment, gross negligence, common law fraud, negligent misrepresentation, and violations of state blue sky laws.  Defendants move to dismiss all of plaintiffs' claims.

Defendants' motion is granted in part and denied in part.

## The Complaint

The following allegations are taken from the complaint and the documents on which it relies.  For the purpose of this motion, the allegations in the complaint are assumed to be true.

Parties

Lead Plaintiffs include Pension Trust Fund for Operating Engineers ("Operating Engineers"), International Brotherhood of Teamsters Local 705 Pension Fund ("Local 705"), and Sheet Metal Workers' National Pension Fund ("Sheet Metal Workers").  Other named plaintiffs include Laborers Local 17 Pension Plan ("Local 17 Pension Plan"), New Mexico Educational Retirement Board ("New Mexico ERB"), and Texas Treasury Safekeeping Trust Company ("Texas Safekeeping").  The trustees or fiduciaries of these entities are also named as plaintiffs: Russell Burns, John Witt, Michael Sullivan and Ronald Palmerick, and Daniel Jackson, respectively.  This action is brought on their

behalf and also on behalf of all persons similarly situated who purchased shares in funds controlled by Austin Capital or a related entity and who suffered losses as a result of the events described below.  The putative class action covers shares purchased between January 2, 2005 and December 11, 2008.

For purposes of the standing discussion below, it is important to summarize the shares purchased by the plaintiffs.  During the class period, Operating Engineers purchased and held $164.3 million of shares in Austin Capital Safe Harbor ERISA Dedicated Fund, Ltd. ("ERISA Fund"); Local 705 purchased and held $25 million of shares in Austin Capital Safe Harbor Portable Alpha Offshore Fund One, Ltd. ("Portable Alpha One");  Sheet Metal Workers purchased and held $50 million of shares in Austin Capital All Seasons Offshore Fund, Ltd. ("All Seasons"); Local 17 purchased and held $4 million worth of shares in the ERISA Fund; New Mexico ERB purchased and held $130 million worth of shares in Austin Capital Safe Harbor QP Fund ("Domestic Fund"); and, finally, Texas Trust purchased $287.5 million worth of shares in Austin Capital Safe Harbor Offshore Fund ("Safe Harbor Offshore Fund").

Plaintiffs assert claims not only related to the Austin Capital funds they invested in — ERISA Fund, Safe Harbor Offshore Fund, Domestic Fund, All

Seasons, and Portable Alpha One — but also on behalf of investors in any Austin Capital fund that invested in any Madoff-related entity.[1]

Defendant Austin Capital is a limited partnership, based in Austin, Texas, that oversees hedge fund investment portfolios for individuals and institutional clients. Austin Capital placed and controlled investments with various funds, including the Rye Select Prime Fund, which plaintiffs allege was nominally managed by Tremont but actually managed by Madoff.

Plaintiffs have also sued various other companies that they assert were involved with the management of Austin Capital's investments. These include Austin Capital Management GP Corp. ("ACM-GP"), Victory Capital Management, Inc., and KeyCorp. ACM-GP is the sole general partner of Austin Capital. KeyCorp is the corporate parent and sole limited partner of Austin Capital, as well as the corporate parent of ACM-GP. Victory, another KeyCorp subsidiary, managed the assets of Austin Capital's funds since Victory acquired Austin Capital in 2006.

The individual defendants include people who occupied management positions with Austin Capital, KeyCorp, and Victory. These include Charles W. Riley, Brent A. Martin, James P. Owen, Robert Wagner, David C. Brown, David

---

[1] These other funds are Austin Capital All Seasons Offshore Fund II, Ltd.; Austin Capital Multi-Strategy Offshore Fund, Ltd.; Austin Capital Safe Harbor Portable Alpha Offshore Fund Two, Ltd.; Austin Capital All Seasons Master Account, G.P.; Austin Capital Safe Harbor Master Account, G.P. Austin Capital Next Generation QP Fund; Next Generation Offshore Fund; Austin Capital All Seasons QP Fund; Austin Capital Safe Harbor ID Fund; All Seasons ID Fund; Austin Capital Multistrategy QP Fund; and Austin Capital Balanced Fund.

E. Friedman, Kyle McDaniel, Montgomery Green, Jay W. Van Ert, and Ronald J. Dugas.  Plaintiffs have also sued various Doe Defendants whose identities are not yet known, but who they assert may be liable.

There are 15 counts in the complaint.  Count 1 alleges violation of § 10(b) of the Exchange Act and rule 10(b)(5). Count 2 is against certain defendants, alleging violation of § 20(a) of the Exchange Act.  Count 3 is brought under § 12(a)(2) of the Securities Act.  Counts 4 through 8 are brought under ERISA. Counts 9 through 15 are brought under various state law theories.

## Standing

To bring a claim even "named plaintiffs who represent a class must allege that they personally have been injured. . . ." <u>Lewis v. Casey</u>, 518 U.S. 343, 357 (1996).  As described above, the complaint alleges violations by defendants with respect to 17 funds controlled by Austin Capital.  But of these 17 funds the named plaintiffs only invested in five.  Thus, the named plaintiffs have suffered no injury traceable to the remaining 12 funds.

Plaintiffs are only permitted to pursue claims relating to investments in the ERISA Fund, Safe Harbor Offshore Fund, Domestic Fund, All Seasons, and Portable Alpha One, the Austin Capital funds in which named plaintiffs actually invested.  All claims not relating to investments in these five funds are

dismissed.  However, because these claims are brought only on behalf of putative class members, it has no impact on the parties named in this lawsuit. It only affects the composition of the putative class and, accordingly, the number of potential claims against defendants.

## Securities Fraud

Paragraphs 63 through 66 of the complaint purport to describe the investments of the Austin Capital funds leading to the losses in this case.  It is alleged that Austin Capital invested in the Rye Select Prime Fund, and that Rye was managed by Tremont entities.  However, the main point made is that Tremont was merely a "nominal investment manager" to Rye and that all investment decisions and all trades were made by Madoff.  The complaint goes on to allege that Austin Capital was "knowingly investing with Madoff," but failed to conduct "meaningful due diligence investigation into Madoff or his company BMIS."  The complaint alleges that all funds invested with Rye were turned over to Madoff.

The allegations of wrongdoing commence with paragraph 67 and are under the heading:

<u>False and Misleading Statements Concerning Austin Capital's Purported Due Diligence, Risk Management Practices and Financial Performance</u>

The complaint quotes at length from various materials disseminated to investors by Austin Capital describing the due diligence which would be undertaken by Austin.  These materials, as quoted, stated over and over the numerous steps which would be taken to scrutinize the "manager," or "hedge fund managers."  Certain of the materials describe what a proper "hedge fund manager" would do such as putting some of his own money into the investment, making his compensation depend on profits, having a reputable auditor, and so forth.

Beginning with paragraph 70, there are allegations about how the due diligence, as promised above, was <u>not</u> performed and how there were numerous failures to live up to the qualifications which were described as attending a proper manager.  However, this portion of the complaint is all about <u>Madoff</u>.  The failures of scrutiny and investigation are said to be failures with respect to <u>Madoff</u>.  The failure to meet the qualifications required of an appropriate manager are said to relate to <u>Madoff</u>.

What is entirely omitted from the complaint is any statement of how the offering materials quoted at length in the complaint identified and defined the "manager" and "hedge fund managers" referred to.  Thus these allegations are very seriously misleading.

But it is this misleading device that leads into the further misleading pleading beginning in paragraph 70 which used Madsoff as the "manager" to which the due diligence was supposed to pertain.

The pleading is seriously flawed.  The pleading devices used are by no means a substitute for a reasonable factual specification as to the actual role of Tremont and why, given that role, it was merely a "nominal investment manager."  Of course, a proper pleading would contain allegations giving full recognition to what was represented to investors about who was the manager to be subject to the due diligence.  Finally, a proper pleading would contain some reasonable showing as to why Austin Capital was obligated to perform due diligence on Madoff.  This pleading requirement is not satisfied by a few conclusory statements and the use of the devices described above.

Count 1 and 2 are therefore dismissed.  However, plaintiffs are given leave to re-plead if they can meet the requirements described above.  The court believes that these requirements are in accord with the PSLRA and Rule 9(b).  It should be added, however, that in the amended complaint, allegations that Austin Capital merely failed to adequately perform due diligence on Madoff, or that it failed to take heed of "red flags" will not be sufficient to plead a cause of action for securities fraud, even if plaintiffs are able to establish that Austin Capital's representations applied to Madoff.  Like any securities fraud claim, the allegations in plaintiffs' complaint will be held to the stringent requirements

of the PSLRA in pleading defendant's state of mind when it made the representations plaintiff alleges.

Count 3, for violation of § 12(a)(2) of the Securities Act, 15 U.S.C. § 77L(a)(2), is also dismissed because § 12(a)(2) only governs public securities offerings.  See Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 571 (1995).  The offerings made by Austin Capital were private.

Therefore, all of the securities fraud claims (counts 1 through 3) are dismissed.

## SLUSA Preclusion

Counts 8 through 15 articulate state-law claims which are precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb.

The Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 78bb(f), 77p(b), ensures that plaintiffs cannot avoid the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 by finding state law vehicles for their securities fraud claims.  See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 82 (2006).  Thus, SLUSA bars certain "covered" class actions brought under state law that allege "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1)(A).

Plaintiffs dispute the applicability of each of SLUSA's requirements — they claim that theirs is not a covered class action, that many of their claims do not hinge on misrepresentations or omissions, and that defendants' alleged misconduct was not in connection with the sale of a covered security.

First, plaintiffs claim that, because the named plaintiffs in the state law class actions are state pension plans, the actions are allowed under the so-called "state action" exception.  The exception permits an otherwise-precluded class action when it is brought by a state pension plan "as a member of a class comprised solely of other states, political subdivisions, or state pension plans that are named plaintiffs, and that have authorized participation, in such an action."  15 U.S.C. § 78(bb)(f)(3)(B)(i).  Plaintiffs contend that, because "two of the named plaintiffs that have authorized participation are state plans," this language applies to them.  But a cursory reading of the statutory text shows otherwise: for a class action to avoid preemption, all — not some — of its members must be named plaintiffs, who have authorized participation, and (for the present purposes) are state pension plans.  Plaintiffs' action fails this straightforward test.  Therefore the state action exception does not apply.

Second, plaintiffs claim that misrepresentation is not a necessary element of their state-law causes of action — particularly their actions for negligence, breach of fiduciary duty, breach of contract, and unjust enrichment.  But this is not the test SLUSA prescribes.  For an action to be precluded by SLUSA

requires only that the action allege misrepresentations, not that
misrepresentation be a necessary component of each of its claims.  It is helpful
to remember that the unit of SLUSA preclusion is the "action" and not the
"claim."  The application of SLUSA at the motion to dismiss stage, then,
involves the dismissal of claims that, were they to remain in the complaint,
would result in the illegality of the entire action under SLUSA.  Thus, in
hammering actions into conformance with SLUSA, courts in this circuit
dismiss state-law claims like plaintiffs' claims for negligence, breach of
fiduciary duty, etc. when those claims are included in a broader complaint that
substantially revolves around allegations of misrepresentation.  See Romano v.
Kazacos, 609 F.3d 512, 521 (2d Cir. 2010); Levinson v. PSCC Servs, Inc., 09
Civ. 269, 2009 WL 5184363 (D. Conn. Dec. 23, 2009).  Thus, for the purposes
of SLUSA, plaintiffs' action is an action alleging misrepresentations or
omissions.

   Finally, plaintiffs claims that the allegations of misrepresentation in their
complaint are not "in connection with" the sale of covered securities.  But the
"in connection with" requirement is to be construed expansively to cover any
conduct within the same scheme as the sale (whether actual or merely
purported) of securities.  See Romano v. Kazacos, 609 F.3d 512, 524 (2d Cir.
2010); Backus v. Connecticut Cmty. Bank, N.A., 789 F. Supp. 2d 292, 307 (D.
Conn. 2011).  And that is certainly the case here: plaintiffs allege that

defendants caused them to invest in the Austin Capital funds through a fraudulent scheme to misrepresent the due diligence being conducted in the course of the fund's investments.  Plaintiffs were harmed when, in deviating from its stated strategy, money was simply paid into the Madoff Ponzi scheme instead of being invested in securities.  Thus, the alleged misrepresentations were "in connection with" covered securities transactions.

Therefore, SLUSA requires that plaintiffs' state law claims (counts 8 through 15) be dismissed.

## ERISA Claims

Plaintiffs are ERISA plans and named fiduciaries of those plans.  Several of the Austin Capital funds invested in by plaintiffs held sufficient funds invested by ERISA plans to transform all the funds' assets into "plan assets" under ERISA.  Because the funds held plan assets, those who controlled them may be considered functional (as opposed to named) fiduciaries under ERISA with attendant duties and liability.  These include the duty to prudently manage and invest ERISA plan assets and to refrain from self-dealing involving ERISA plan assets.  The complaint first alleges that all defendants were fiduciaries under ERISA via their control of plan assets.  The complaint then alleges that defendants breached their ERISA fiduciary duties by failing to prudently manage plan assets and by engaging in self-dealing.

ERISA CLAIMS SOUNDING IN FRAUD

In a typical ERISA claim, a plaintiff need only plead sufficient facts to state a claim for relief that is plausible on its face, as required by Fed. R. Civ. P. 8(a).  However, if an ERISA claim is based on fraud, plaintiffs may be required to meet the heightened the pleading standards of Fed. R. Civ. P. 9(b).  See, e.g., In re Xerox Corp. Erisa Litigation, 483 F. Supp. 2d 206, 216-17 (D.Conn. 2007).  Defendants in this case argue that because plaintiffs' ERISA claims are based on the same allegations that plaintiffs based their fraud claims on, the ERISA claims sound in fraud and therefore must meet the higher pleading standards of Rule 9(b) and therefore, like the securities fraud claims above, must be dismissed.

Defendants' argument has merit, but only to a point.  To the extent plaintiffs' ERISA claims rely on allegations of intentional misrepresentations, those claims have failed — for the reasons described above in dismissing the securities fraud claims — to meet the heightened pleading standards of Rule 9(b) and therefore plaintiffs may not pursue ERISA claims based on such allegations.

Plaintiffs' claim of self-dealing (count 6) falls under this "sounding in fraud" umbrella.  ERISA § 406(a) prohibits a fiduciary of an employee benefit plan from directly or indirectly causing the "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. . . ."  The complaint

alleges that plaintiffs paid fees to Austin Capital based on net assets under management at Austin Capital. Plaintiffs argue that since Madoff's operation was a fraud, any Austin Capital assets under his control were fictional, and therefore plaintiffs ended up paying fees based, in part, on fictional assets. The complaint further alleges that by not refunding fees paid by plaintiffs on these fictional assets, defendants engaged in self-dealing in violation of § 406(a). But it is clear that this cause of action depends on the allegation that Austin Capital knew that the assets upon which it collected fees were fictional. Thus, for the purposes of Rule 9(b), claim 6 sounds in fraud.

However, plaintiffs' ERISA claims go beyond fraud. The complaint alleges that even if defendants performed their due diligence and risk management as advertised, they still missed or did not pay sufficient attention to the red flags of Madoff's operation that would have alerted them to the potential of fraud and dissuaded them from investing in the Rye Select Prime Fund. This failure, the complaint alleges, rises to at least the level of imprudence and therefore defendants, to the extent they are fiduciaries under ERISA, have breached the fiduciary duty imposed on them by ERISA. These and similar allegations do not rely on claims of fraud and are easily separated from plaintiffs' fraud-based claims.

Thus, claim 6 is dismissed.  The allegations underlying the remaining ERISA claims (claims 4, 5, and 7) will be examined under the more forgiving pleading standard of Rule 8(a).

PRUDENCE

As just discussed, the complaint alleges that by missing or not paying sufficient attention to the red flags of Madoff's operation, defendants failed to invest and/or manage ERISA assets in a prudent manner, in violation of ERISA § 404(a)(1)(B).  With such claims, the issue is whether the complaint's allegations support an inference that the ERISA fiduciaries made investment decisions under circumstances that gave rise to such risks relating to plan assets that those decisions were imprudent.  See In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 364 (2d Cir. 2010).

The ERISA prudence standard is one of the highest duties known to the law.  Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982), cert. denied, 459 U.S. 1069 (1983).  This standard does not require merely the level of care expected of a prudent layperson, but rather that of a prudent fiduciary with experience dealing with a similar enterprise.  United States v. Mason Tenders Dist. Council of Greater New York, 909 F. Supp. 882, 886 (S.D.N.Y. 1995).

> "Courts have construed ERISA's prudent person standard as an objective standard, requiring the fiduciary (1) to employ proper methods to investigate, evaluate and structure the investment; (2)

to act in a manner as would others who have a capacity and
familiarity with such matters; and (3) to exercise independent
judgment when making investment decisions."

Bd. of Trustees of Local 295/Local 851-IBT Employer Pension Fund v. Callan
Associates, Inc., 97 Civ. 1741, 1998 WL 289697 (S.D.N.Y. June 4, 1998) aff'd
sub nom. Bd. of Trustees of Local 295/Local 851-IBT Employer Group Pension
Fund & Local 295/Local 851-IBT Employer Group Welfare Fund v. Callan
Associates, Inc., 175 F.3d 1007 (2d Cir. 1999).

However, the court must take care not to judge the defendants' behavior

with the benefit of hindsight.  Chao v. Merino, 452 F.3d 174, 182 (2d Cir.

2006).

In this case, prudence is measured against hypothetical sophisticated

and prudent investment professionals with experience controlling and

managing large hedge funds.  Thus, the proper question to focus on is whether

a prudent, sophisticated investment professional with experience in controlling

large hedge funds and faced with the same facts as faced defendants, would

have acted in a similar fashion.

In answering this question, the court is particularly impressed by the

allegation that Madoff's returns, based on his advertised investment strategy,

were mathematically impossible — a fact allegedly recognized by other

investment managers well before the fraud was revealed to the wider world.

Plaintiffs allege that the defendants knew that Madoff was the person actually

managing their investment.  And defendants surely had access to some description of Madoff's investment strategy, either through proprietary channels or in the financial press.  Therefore, as sophisticated investors, defendants should have been aware of this red flag and it should have made defendants question their investment.  Thus, defendants' unawareness of, or blindness to, this particular anomaly raises a significant doubt about whether defendants  employed the appropriate methods to inform themselves before making the decision to invest in the Rye Select Prime Fund.  See Donovan, 680 F.2d at 271-73; In re Beacon, 745 F. Supp. 2d at 419 (allegations that defendants failed to act on knowledge of material risk to fund was enough to support inference of imprudence).

Therefore the complaint adequately alleges imprudence.

ERISA Fiduciary Status

Even though the complaint adequately alleges imprudence by defendants, liability for this imprudence can only attach to defendants who were ERISA fiduciaries when imprudent decisions were made.  See Pegram v. Herdrich, 530 U.S. 211, 226 (2000).  Thus, in addition to pleading imprudence, the complaint must also allege facts supporting a plausible inference that each defendant was, at the relevant times, an ERISA fiduciary.

ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248, 262 (1993).  Discretion over the disposition of plan assets is key.  <u>See</u> <u>Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.</u>, 302 F.3d 18, 28 (2d Cir. 2002).  The determination of whether one is a functional fiduciary is fact-based and generally inappropriate to resolve on a motion to dismiss.  <u>See</u> <u>Bernhard v. Cent. Parking Sys. of New York, Inc.</u>, 282 F.R.D. 284, 288 (E.D.N.Y. 2012) (collecting cases).

Defendants acknowledge that Austin Capital was an ERISA fiduciary. But, in addition, the complaint also contains allegations about the involvement of various individual and corporate defendants in making investment decisions and their control over plan assets.  The offering documents and Austin Capital's SEC filings indicate that all of the individual defendants were held out by Austin Capital as being involved with making investment decisions. Similarly, the court finds that plaintiffs have sufficiently alleged the corporate defendants' ability to influence Austin Capital's investment decisions.

<u>ERISA Co-fiduciary Liability</u>

In addition to liability for breaching fiduciary duty, ERISA fiduciaries also face liability if they participate in or enable a breach of fiduciary.  ERISA provides that fiduciaries may be responsible for breaches of other fiduciaries if

they knowingly participate in the breach, enable other fiduciaries to commit a breach, or know of breaches by others.  29 U.S.C. § 1105.

The allegations underlying the claim for primary breach of fiduciary duty, which this court has found sufficient to survive this motion to dismiss, also support a claim for co-fiduciary liability.

Therefore, because the complaint adequately alleges imprudence and the fiduciary status of the defendants under ERISA, the motion to dismiss is denied with respect to counts 4 and 5.

DISGORGEMENT

ERISA § 502(a)(3) permits a plan participant, beneficiary, or fiduciary to bring an action for appropriate equitable relief against non-fiduciaries to redress violations or enforce the ERISA provisions previously mentioned in this opinion.  29 U.S.C. § 1132(a)(3).  Plaintiffs seek disgorgement — as a separate claim rather than a remedy — only from those defendants who are not found to be fiduciaries.

The court believes that it is inappropriate to have such a separate claim. The appropriate relief can be determined if plaintiffs ultimately prevail on any or all of their ERISA claims.  Therefore, count 7 is dismissed.

Therefore, among the ERISA claims, counts 6 and 7 are dismissed.  The motion to dismiss is denied with respect to counts 4 and 5.

## Conclusion

Counts 1 through 3 and counts 6 through 15 are dismissed.  The motion to dismiss is denied with respect to counts 4 and 5.

So ordered.

Dated:  New York, New York
            December 21, 2012

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 21, 2012

20